**In re Johnny Austin GERMANY, Patricia Ann Germany.**

**Johnny Austin GERMANY, Patricia Ann Germany, Plaintiffs,**

v.

**FARMERS HOME ADMINISTRATION, Defendant.**

**Bankruptcy No. 8502072MC.**
**Adv. No. 860008MC.**

United States Bankruptcy Court, S.D. Mississippi, E.D.

Dec. 29, 1986.

Jerry L. Bustin, Forest, Miss., for plaintiffs, debtors.

George Phillips, U.S. Atty., and Dan M. McDaniel, Jr., Asst. U.S. Atty., Jackson, Miss., for defendant Farmers Home Admin.

ORDER ON "AMENDED MOTION TO SET ASIDE ASSIGNMENT OF INCOME" FILED BY THE DEBTORS, JOHNNY AUSTIN GERMANY AND PATRICIA ANN GERMANY, AND ON FARMERS HOME ADMINISTRATION'S "CROSS MOTION TO DETERMINE VALIDITY OF ASSIGNMENT"

EDWARD ELLINGTON, Chief Judge.

THIS MATTER came on for hearing on the Debtors' "Amended Motion to Set Aside Assignment of Income" and a "Cross Motion to Determine Validity of Assignment" filed by Farmers Home Administration. After examining the facts and considering the same, the Court finds that the Debtors' Motion to set aside the assignment is well taken and should be sustained while the Farmers Home Administration's Cross Motion is not well taken and should be denied. Thus, the Debtors are allowed to terminate the assignment of income to Farmers Home Administration.

On December 12, 1985, Johnny Austin Germany and Patricia Ann Germany filed a joint petition under Chapter 13 of the Bankruptcy Code.

Subsequent to the filing of the Chapter 13 petition, the Debtors filed an Amended Motion to Set Aside Assignment of Income. The defendant, Farmers Home Administration (FmHA) filed its reply and a Cross Motion to Determine Validity of Assignment.

By agreement of the parties, no testimony was taken and written briefs were submitted by the parties. Subsequent to the filing of the briefs, the Court, by letter, requested a statement from both parties setting forth the business operations between the debtors and the producing company, Green Acre Farms, where the assignment of income was issued, as it seemed to be a pertinent area for review before rendering a final decision. Both parties responded.

Briefly, the facts are:

From June, 1970 to July, 1984, the Debtors executed eight (8) promissory notes to FmHA. Concurrently with the execution of the promissory notes, the Debtors also executed six (6) real estate deeds of trust. To further secure payment, the Debtors executed a Security Agreement to FmHA encumbering the Debtors' crops, farm equipment, livestock and other farm products and supplies.

On or about October 7, 1982, the Debtor, Johnny Austin Germany, executed and delivered to FmHA an egg deduction request which was accepted by the producing company, Green Acre Farms. The egg deduction request authorized Green Acre Farms to deduct 50% each week from the proceeds due to the Debtors from eggs delivered to Green Acre Farms and to pay this amount to FmHA.

FmHA alleges that the security agreement given to it by the Debtors includes "farm products", which extends to eggs and egg proceeds. Thus, FmHA claims its security interest continues in the proceeds due the debtors after the eggs are delivered to Green Acre Farms. FmHA further submits that the egg assignment made is

security and cash collateral for its loans and should be allowed to remain in effect in order to assure FmHA adequate protection.

The Debtors contend that the proceeds from the eggs are not collateral for FmHA's security agreement. They submit to the Court that the assignment is nothing more than an agreement which should be set aside in order to fund their Chapter 13 plan.

## DISCUSSION

The important question is whether FmHA has a valid and enforceable security agreement in the egg proceeds due the Debtors after delivery to the producing company. The existence of a valid and enforceable security agreement arises from the requirements for the creation of a security interest as set forth in the Uniform Commercial Code. Chapter 9, Title 75, *Miss. Code of 1972*, governs the creation, attachment and perfection of a security interest in personal property in the State of Mississippi.

§ 75–9–105(1)(*l*), *Miss. Code of 1972*, defines security agreement as follows:

"Security Agreement" means an agreement which creates or provides for a security interest.

§ 75–1–201(37), *Miss. Code of 1972*, defines a security interest as follows:

"Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation ...

§ 75–9–203, *Miss. Code of 1972*, sets forth the formal requirements for attachment and enforceability of a security interest and provides as follows:

(1) Subject to the provisions of section 75–4–208 on the security interest of a collecting bank and section 75–9–113 on a security interest arising under the chapter on Sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a) the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and, in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; and

(b) value has been given; and

(c) the debtor has rights in the collateral.

(2) A security interest attaches when it becomes enforceable against the debtor with respect to the collateral. Attachment occurs as soon as all of the events specified in subsection (1) have taken place unless explicit agreement postpones the time of attaching.

For FmHA to have a valid and enforceable security agreement granting a security interest in any of Johnny and Patricia Germany's chickens, eggs and the proceeds thereof, all the following elements must be present:

(1) FmHA must have a written agreement signed by the debtor granting a security interest in collateral;

(2) A description of the collateral;

(3) Value given by FmHA;

(4) Debtor must have rights in the collateral.

The issue then is whether all the conditions have been met to grant FmHA a security interest in the proceeds of the egg sales and, if so, whether the assignment of income would be security and cash collateral for its loans. After reviewing the materials submitted by both parties, the Court finds there is nothing to indicate that elements (1), (2), and (3) above have not been fulfilled. However, element (4), which requires that the Debtor must have rights in the collateral, is missing as it pertains to the chickens, eggs and proceeds thereof. The title to the chickens and eggs remains in Green Acre Farms. The compensation due the Debtor is computed based on the number of chickens cared for by the Debtor or dozens of eggs laid by the chickens, graded by the Debtor and picked up by Green Acre Farms.

Although the Debtors could not present an executed contract signed by the Debtors and Green Acre Farms, an unsigned

"Breeder Contact" from Green Acre Farms was submitted to comply with the Court's request for information concerning the business operations between the Debtors and producing company. This "Breeder Contract" appears to be the standard business norm in the industry and provides in part:

Paragraph 2:

Title to the chickens, feed, medication, litter and such other supplies shall remain with GREEN ACRE FARMS, INC. at all times, and in the event of the lack of care, neglect or other failure to perform by the GROWER, GREEN ACRE FARMS, INC. shall be permitted peaceable entry and exit from GROWER'S property to care for or to remove breeders and other property belonging to GREEN ACRE FARMS, INC. at the GROWER'S expense.

Paragraph 3:

The GROWER is not an employee or agent of GREEN ACRE FARMS, INC. and shall have no right to bind it to any contract or agreement. The GROWER shall furnish his own facilities, including equipment for caring of layers placed with him and shall be solely responsible for the payment of any employee he may hire to assist him in caring of the flock which is the subject of this contract. GROWER agrees to pay all taxes and other liabilities incurred by him, his agents or employees and that GREEN ACRE FARMS, INC. shall have no liability whatsoever.

Paragraph 4:

... *GREEN ACRE FARMS, INC. AGREES:* 1. That it will compensate GROWER for his time, labor and the performance of his obligations under this contract the following sums:

A. GROWER will be paid *2.25¢ per bird, per week,* from placement date of chickens up and until chickens are producing eggs at a rate of 25% of the flock in lay, this 2.25¢ per bird, per week will be paid on *live birds only after culling,* at the day of 25% production being reached. Allow at least *7 to 14 days* for processing of this payment.

B. When flock reaches 25% egg production, the following base pay will be paid weekly according to the schedule below on farms with nest and scales to meet GREEN ACRE FARMS, INC. specifications:

21¢ for each dozen eggs properly graded and picked up by the company (no pay for cracked and dirty eggs) ...

It is clear that ownership of the chickens or eggs did not vest in the Debtors at any time prior to the security agreement or thereafter. At best the Debtor held only a contract for services terminable at will by the producing company. Thus, the Debtor did not have rights in the collateral to grant a security interest and FmHA's security agreement is not enforceable to include the proceeds from any egg production sales.

The Court concludes FmHA does not have a valid and enforceable security interest in the chickens and eggs and is not entitled to receive any of the egg proceeds as security and cash collateral for its loans. Thus, the Court finds that the Debtors' Motion to set aside the assignment is well taken and should be sustained while the FmHA's Cross Motion is not well taken and should be denied.

THEREFORE, IT IS ORDERED that the Assignment of Income by the Debtors to the FmHA should be, and is hereby, set aside.