**In re Tom H. BARTON and Sandra I. Barton, Debtors.**

**Tom H. BARTON and Sandra I. Barton, Plaintiffs,**

v.

**UNITED STATES of America, FARMERS HOME ADMINISTRATION, Defendant.**

No. 90–15628M.
Adv. No. 91–5506.

United States Bankruptcy Court,
W.D. Arkansas,
Fayetteville Division.

Sept. 5, 1991.

Terry A. Zelinski, Fayetteville, Ark., for debtors.

J. Michael Fitzhugh, Fort Smith, Ark., for Farmers Home Admin.

A.L. Tenney, N. Little Rock, Ark., Chapter 13 Trustee.

## MEMORANDUM OPINION

JAMES G. MIXON, Bankruptcy Judge.

On December 6, 1990, Tom H. Barton and Sandra I. Barton (debtors) filed a petition for relief under the provisions of chapter 12 of the United States Bankruptcy Code. On February 14, 1991, the debtors filed a complaint to determine the validity of the United States Farmers Home Administration's (FmHA) lien and for turnover of certain checks in FmHA's possession.

The proceeding before the Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E) and (K), and the Court has jurisdiction to enter a final judgment in the case. The following shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

I

## BACKGROUND

The debtors reside in Washington County, Arkansas, and are engaged in the chicken farming business. FmHA loaned the debtors $261,400, evidenced by three promissory notes, dated September 4, 1985. The debtors used the loan proceeds to purchase two tracts of land with improvements consisting of two poultry houses, fixtures, and equipment. The debtors executed a mortgage granting FmHA a lien in the two tracts of real property and a security agreement granting FmHA a security interest in fixtures, equipment, and all crops growing or to be grown.

On May 24, 1989, the debtor, Tom Barton, executed an assignment which purported to assign to FmHA all monies "due or which may become due to [the debtors] from [Tyson]." The May 24, 1989, assignment was entered into prior to the debtors' entering into a broiler contract with Tyson, which the debtor, Tom Barton, executed on October 23, 1989.

According to the broiler contract, Tyson was responsible for furnishing chicks, feed, and medication to the debtors and for providing technical advice regarding the growth of the chicks as required. In addition, Tyson "or its designee at its sole discretion" had the right to market the poultry at any time. Both legal and equitable title remained in Tyson at all times.

The debtors were responsible for providing well-maintained housing and equipment for use in growing the chicks. The debtors were also responsible for the flock's safety and well-being until such time as Tyson took possession of the flock for processing and ultimate sale. The contract provided that Tyson, "[a]t the end of the growing period designated by [Tyson]," would pay the debtors according to a formula based on the flock's condition and production costs. All checks issued by Tyson under the broiler contract were issued payable jointly to Tom Barton and FmHA, pursuant to the purported assignment.

At the time the debtors filed bankruptcy, they were in possession of two checks from Tyson totalling $6,565.24. The debtors forwarded the checks to the chapter 12 trustee, who, in turn, forwarded the checks to FmHA for endorsement. FmHA refused to endorse the checks, claiming that it has a valid, perfected lien or assignment interest in the checks and is entitled to possession of the checks. The debtors then filed this complaint to determine the validity of FmHA's interest in the checks arguing that FmHA does not hold a valid, perfected lien or interest in the checks and, therefore, the

checks should be turned over to the debtors. On March 8, 1991, a hearing was held and the matter was taken under advisement.

## II

## DISCUSSION

■ FmHA bases its claim of entitlement to the checks on a document styled "ASSIGNMENT OF PROCEEDS FROM THE SALE OF PRODUCTS." The document provides in relevant part:

In consideration of a loan made ... by [FmHA] the [debtor] hereby assigns and transfers to [FmHA] the following percentages or amounts of the purchase price due or which may become due to [the debtor] from the [Tyson] for the above-named product(s) sold or which may be sold to, by, or through [Tyson]:

....

(b) ... 100% of proceeds of purchase price, payable to grower and FmHA or full purchase price if less than that amount.

The type of product to be sold was designated in the assignment as broilers. The assignment describes the property assigned as proceeds resulting from the sale of broilers.

■ A sale is "the passing of title from the seller to the buyer for a price." Ark. Code Ann. § 4–2–106(1) (1987). In this case, title to the chicks always remained with Tyson. Therefore, no sale occurred between the debtors and Tyson. If no sale occurred, an assignment that purports to assign the proceeds of a sale is ineffective. *See Germany v. Farmers Home Administration (In re Germany)*, 73 B.R. 19 (Bankr.S.D.Miss.1986).

■ FmHA argues that any defect in the form of its assignment was cured by a security agreement executed by the debtors, which granted FmHA a lien in proceeds. The checks in FmHA's possession represent monies due to the debtors from Tyson under the broiler contract for services the debtors performed, i.e., caring for and promoting the growth of the flock. Section 4–9–106 provides that the "right to payment ... for services rendered which is not evidenced by an instrument or chattel paper" is an account. Ark.Code Ann. § 4–9–106 (1987).

The debtors granted FmHA a security interest in, among other items, the debtors' interest in:

the following collateral, including proceeds and products thereof:

Item 1. All crops, annual and perennial and other plant products now planted, growing or grown....

The term "proceeds" in the security agreement only refers to proceeds from crops of plant products; nowhere in the security agreement do the debtors grant FmHA a security interest in an account due for services performed.

## III

## CONCLUSION

For the reasons stated above, FmHA does not have an assignment or perfected security interest in the monies due the debtors from Tyson. FmHA is ordered to endorse the checks in question and deliver them to counsel for the debtors forthwith. The debtors are also awarded judgment for interest at the rate of 12% per annum on the disputed sums from the date FmHA refused to endorse the checks to the debtor.

IT IS SO ORDERED.